IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RODNEY DEANDRE THOMAS,　　　）
　　Plaintiff,　　　　　　　　　　）
　　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　）　CIVIL ACTION NO. 1:21-00048-N
　　　　　　　　　　　　　　　　　）
KILOLO KIJAKAZI, *Acting*　　　　）
*Commissioner of Social Security*,　）
　　Defendant.　　　　　　　　　　）

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Deandre Thomas brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 23, 24, 26) and those portions of the certified transcript of the administrative record (Doc. 18) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

Commissioner's final decision is due to be **AFFIRMED**.[2]

## I.    *Procedural Background*

Thomas protectively filed the subject DIB application with the Social Security Administration ("SSA") on May 27, 2019, and protectively filed the subject SSI application on May 10, 2019. After they were initially denied, Thomas requested, and on April 21, 2020, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On June 15, 2020, the ALJ issued an unfavorable decision on Thomas's applications, finding him not entitled to benefits. (*See* Doc. 18, PageID.73-90).

The Commissioner's decision on Thomas's applications became final when the Appeals Council for the SSA's Office of Appellate Operations denied his request for review of the ALJ's unfavorable decision on December 3, 2020. (*Id.*, PageID.67-71). Thomas subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 31, 32).

civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide

the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her

position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)

(11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

(per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's

decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)

(per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

## III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Thomas met the applicable insured status requirements through December 31, 2022, and that he had not engaged in substantial gainful activity since the alleged disability onset date of February 28, 2019.[7] (Doc. 18, PageID.79). At Step Two,[8] the ALJ determined that Thomas had

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work

the following severe impairments: congestive heart failure, lumbar spine spondylosis, left hand subluxation of first metacarpal joint, and chronic obstructive pulmonary disease. (Doc. 18, PageID.79-80). At Step Three,[9] the ALJ found that Thomas did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 18, PageID.80-81).

At Step Four,[10] the ALJ determined that Thomas had the residual functional

---

experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth

capacity (RFC) "to perform light work, as defined in 20 CFR 404.1567(b) and

416.967(b),[11] except [he] can frequently operate hand controls, reach, push, pull,

---

step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

handle, finger, and feel with the left upper extremity[;] can frequently kneel, crouch, stoop, balance, and crawl, and can frequently climb stairs and ramps[;] can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts[;] can have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation[;] can tolerate occasional exposure to extreme heat, extreme cold and vibration[;] is able to understand, carry-out, and remember simple instructions, and make simple work related decisions[;] will be off task 5% of the workday[; and] will be absent from work 1 day per month." (Doc. 18, PageID.81-84). The ALJ then determined that Thomas had no past relevant work. (*Id.*, PageID.84-85).

However, at Step Five, after considering testimony from a vocational expert,[12] the ALJ found that there exist a significant number of jobs in the national economy as a school bus monitor (135,390 jobs nationally) and cafeteria attendant (approximately 63,408 jobs nationally) that Thomas could perform given his RFC, age, education, and work experience. (Doc. 18, PageID.85-86). Thus, the ALJ found that Thomas was not "disabled" under the Social Security Act. (*Id.*, PageID.86).

---

20 C.F.R. §§ 404.1567(b), 416.967(b).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

## IV.    *Analysis*

### a.  Listing 4.02

Thomas first argues that the ALJ erred in finding at Step Three that he did not meet Listing 4.02 (chronic heart failure while on a regimen of prescribed treatment). No reversible error has been shown.

A claimant must present sufficient evidence satisfying both paragraph A and paragraph B of Listing 4.02 in order to meet it, though each paragraph presents multiple alternative criteria by which it may be satisfied. The following criteria are relevant to Thomas's case:

A. Medically documented presence of one of the following:

1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual…

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.02.

The ALJ expressly found at Step Three that Thomas failed to satisfy any of those criteria, stating:

> [Thomas]'s congestive heart failure does not meet the criteria of Listing 4.02 (Chronic heart failure), because he does not have systolic or diastolic failure resulting in persistent symptoms of heart failure which very seriously limit his or her ability to actively initiate, sustain, or complete activities of daily living. Cardiologist, Erik Eways conducted a cardiac catheterization of [Thomas] that resulted in 'normal findings;' he recommended no treatment or medication (Ex. 4F/14-17). Moreover, [Thomas] has the ability to complete most of his activities of daily living (Ex. 6E).

(Doc. 18, PageID.80-81).

Regarding the paragraph A criteria, Thomas argues that the ALJ improperly focused on Dr. Eways's March 2019 cardiac catheterization while ignoring a December 2019 echocardiogram that showed the requisite ejection fraction for systolic failure. Assuming for present purposes that the December 2019 echocardiogram satisfied the paragraph A criteria—more on that test result later—the ALJ did not err in finding that Thomas failed to satisfy the paragraph B(1) criteria by showing "[p]ersistent symptoms of heart failure that very seriously limit [his] ability to independently initiate, sustain, or complete activities of daily living…"[13]

In arguing that he satisfies paragraph B(1), Thomas relies primarily on excerpts from his self-completed Functional Report—statements that "doing personal care activities like dressing took longer because he became 'winded[;]' "

---

[13] The Commissioner's brief suggests, in a footnote, that the December 2019 echocardiogram may not have been valid, but devotes most of her argument to the paragraph B(1) criteria.

that he could make "simple meals" for himself that "took only 5 to 10 minutes to make[;]" that he could perform light house work for varying amounts of time while resting in between; that he "rarely socialized because of shortness of breath and tiredness[;]" that he could only lift "very light" items; and "became easily short of breath when walking short distances, climbing stairs, and completing simple tasks" (Doc. 23, PageID.534). These assertions certainly support the conclusion that Thomas's congestive heart failure made initiating, sustaining, and completing activities of daily living more difficult. However, an ALJ is not required to accept a claimant's subjective claims about the limiting effects of his impairments at face value, but must instead compare them to the medical and other evidence of record to determine if it supports them. Moreover, even accepting as true the subjective complaints Thomas cites, reasonable minds can differ over whether they show that they *very seriously* limited Thomas's ability to initiate, sustain, or complete activities of daily living, especially since Thomas's own report of his activities admits he is able to accomplish personal care despite his impairment. And "[i]f the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). *See also Adefemi*, 386 F.3d at 1029 ("Under the substantial evidence standard, we cannot look at the evidence presented to the [administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings

made by the [agency] were unreasonable.").[14]

Thomas also cites portions of the medical record that he argues support the claims in his Functional Report. However, those citations consist largely of diagnoses and notations of symptoms such as fatigue, palpitation, and shortness of breath. "[T]he mere existence of … impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard[,]" *Moore,* 405 F.3d at 1213 n.6 (citing *McCruter,* 791 F.2d at 1547 (" 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")), and the symptom notations largely mirror symptoms reported by Thomas in his Functional Report. As was previously observed, Thomas's statements regarding his daily activities do not indisputably establish that he satisfies paragraph B(1).[15]

---

[14] Thomas claims "the types of daily activities in the Functional Report are those of short duration which in the view of the Eleventh Circuit do not disqualify a claimant for disability." (Doc. 23, PageID.535). Leaving aside the fact that Thomas has also argued the daily activities in the Functional Report prove that he is disabled, the cases he relies on rejected using a claimant's ability to perform everyday activities of short as a basis for discounting, respectively, a treating physician opinion and a claimant's subjective complaints of disabling pain. Here, however, Thomas is arguing that he meets a listing; therefore, he must show that his impairments are so severe he should be presumed disabled regardless of their effect on his ability to work. *See* n.9, *supra.* And the particular listing he claims to satisfy specifically requires a showing that his activities of daily living are "very seriously" limited. Therefore, Thomas's ability to complete activities of daily living, even if they are of short duration, weighs more heavily against finding that he meets Listing 4.02, even they are not, standing alone, sufficient to support an overall finding of not disabled.

[15] Thomas cites medical notations designating him "as a NYHA class III and Class C heart failure patient[,]" which he asserts, based on non-SSA internet sources, show "marked limitation" in physical activity, with "less than ordinary activity"

In sum, Thomas has failed to show the ALJ erred in finding that he did not meet Listing 4.02. And as explained below, substantial evidence supports the ALJ's determination that Thomas's congestive heart failure did not cause otherwise disabling limitations.

### b.  Medical Opinion

Thomas's other claim of error is that the ALJ improperly found the opinion of his treating cardiologist Dr. Kenneth Burnham to be not persuasive. Again, no reversible error has been shown.

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as

---

causing fatigue, palpitation, and shortness of breath. (Doc. 23, PageID.535-536). Thomas also cites the medical opinion of cardiologist Kenneth Burnham, M.D, assessing marked limitation in physical activity due to his symptoms. Again, however, the relevant inquiry for paragraph B(1) is not whether congestive heart failure makes Thomas's ability to initiate, sustain, or complete activities of daily living more difficult, but whether it _very seriously_ limits Thomas in this regard. Thomas has failed to persuade the undersigned that the ALJ's view that Thomas was not "very seriously" limited was an unreasonable view of the evidence. Moreover, as will be explained, the ALJ did not error in finding Dr. Burnham's opinion unpersuasive.

understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "When a medical source provides one or more medical opinions … , [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c), 404.920c(c).

"The most important factors … are supportability … and consistency…" 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *accord* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The

Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions … in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ discussed evidence related to Thomas's congestive heart failure as follows:

> In February 2019, the claimant presented at the Emergency Department of the Atmore Community Hospital after sustaining injuries to his left hand and lower back while moving his refrigerator. The x-rays of the claimant's lumbar spine revealed moderate lumbar spine spondylosis with moderate narrowing of the L4-5 and L5-S1 disc spaces; mild 3 mm. retrolisthesis of the L5 vertebra over the S1 vertebra and mild lateral curvature of the lower thoracic-upper lumbar spine (Ex. 1F/59). Additionally, the x-rays of the claimant's left hand evinced subluxation of the first carpometacarpal joint, but without acute or dominant abnormalities (Ex. 1F/60).
>
> On March 27, 2019, the claimant was admitted at the Mobile Infirmary Medical Center after presenting symptoms of shortness of breath and palpitations for one month (Ex. 2F/14-18). Additionally, the claimant also endorsed fatigue and productive cough. *Id.* Cardiologist, Erik Eways, M.D, noted the claimant has no known history of lung disease. Id. The claimant originally complained of green sputum but cleared up after a round of antibiotics and that bronchodilators have helped him quite a bit (Ex. 2F/18 and 22). Dr. Eways' physical examination of the claimant was unremarkable that showed normal

coronary arteries and normal left ventricular systolic function. *Id.* Additionally, Dr. Eways performed cardiac catheterization to the claimant, which revealed LVEF of 55-60 percent and normal left ventricular systolic function (Ex. 4F/14-17). *Id.* Dr. Eways made no treatment or medication recommendations as the diagnostic result showed "normal findings." *Id.*

On March 29, 2019, radiologist, Kenneth Francez, M.D., evaluated the transthoracic echocardiogram of the claimant that demonstrates left ventricular ejection fraction (LVEF) estimated at 30-35 percent to signify "mild to moderate" reduced function, moderate global hypokinesis of the left ventricle and left ventricular diastolic dysfunction (Ex. 4F/16-17).

In March 2019, pulmonologist, Virginia Radcliff, M.D., evaluated the claimant's chronic obstructive pulmonary disease (Ex. 2F/18-28). She noted the claimant endorsed palpitations leading to chest tightness and shortness of breath (Ex. 2F/29). Dr. Radcliff noted the claimant is a smoker who reports fatigue and productive cough. *Id.* The claimant reported improved breathing with nebulizers but cause his "heart to jump and feel jittery." *Id.* The claimant's examination was remarkable for diminished lung function with mild expiratory wheezing bilaterally, but his heart showed normal rate and rhythm, normal S1 and S2, no murmurs, rubs, clicks or gallops. Id. The claimant's chest x-rays demonstrate hyper-inflated lungs with emphysematous changes (Ex. 2F/21). Finally, Dr. Radcliff noted the claimant smokes ½ pack a day and drinks about 4.2 to 8.4 oz. of alcohol per week (Ex. 2F/23).

The echocardiogram of the claimant taken in August 2019 demonstrated mildly impaired left ventricular function with a 40 percent ejection fraction, mild mitral regurgitation and mobile interatrial septum (Ex. 6F/2). In January 2020, the claimant presented for evaluation of his congestive heart failure to cardiologist, Robert Robichaux, M.D. (Ex. 7F/4). Dr. Robichaux's physical examination of the claimant was unremarkable that showed a normal cardiovascular system. Id. Additionally, he noted the claimant appeared in "[n]o acute distress, well appearing and well nourished." Dr. Robichaux noted that he cannot titrate the claimant's congestive heart failure regimen given the low blood pressure. *Id.* He recommended follow-up in 3 months to

assess the left ventricular ejection fraction (LVEF) after the claimant is detoxified of all alcohol in his system. *Id.*

...

The claimant's allegations of functional limitations from his congestive heart failure is incongruent with the medical evidence. First, there is a discrepancy between Dr. Eways' cardiac catheterization that resulted in an LVEF of 55-60 percent; he concluded the results as normal and provided no treatment to the claimant. On the other hand, Dr. Francez found the claimant has 30-35 percent LVEF of 30-35 based on an echocardiogram study (Ex. 4F/16-17; *see also* 7F/20). However, further analysis is not necessary as additional evidence to include non-medical and testimonial evidence provide substantial evidence of the mild to moderate severity of the claimant's congestive heart failure. What is significant are Drs. Eways and Radcliff's [sic]  unremarkable cardiac physical examination findings in March 2019 (Ex. (Ex. 2F/18, 22, 29). Finally, [in January 2020,] Dr. Robichaux described the claimant who appeared in "[n]o acute distress, well appearing and well nourished." (Ex. 7F/4). Dr. Robichaux also noted that the claimant's alcohol abuse interferes with his congestive heart failure treatment. *Id.*

(Doc. 18, PageID.82-83).

The ALJ then addressed Dr. Burnham's medical opinions as follows:

The undersigned assigns limited persuasiveness to the medical source statement of the cardiologist, Kenneth Burnham, M.D., (Ex. 8F and 9F). His opinion is of limited persuasiveness because there is an insubstantial amount of medical evidence support his extreme limitations as well as being inconsistent with the findings of his fellow cardiologists at the Cardiology Associates of Mobile who found the claimant with mild to moderate LVEF. *Supra.*

(Doc. 18, PageID.84).[16]

---

[16] Thomas does not contest the ALJ's determination that Dr. Burnham's "statement that [Thomas] is permanently disabled will not be analyzed under the current rules, as it is inherently neither valuable nor persuasive to us, because it is a statement on an issue reserved to the Commissioner…" (Doc. 18, PageID.84). *See* 20 C.F.R. §§

In challenging the ALJ's finding on the persuasiveness of Dr. Burnham's opinion, Thomas asserts that the "ALJ entirely failed to consider whether Dr. Burnham's opinion was supported by the December 2019 echocardiogram showing a severely impaired LVEF of 25% to 30%..." (Doc. 23, PageID.537 (citing Doc. 18, PageID.502)). However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the decision is not a broad rejection which is not enough to enable the Court to conclude that the ALJ considered a claimant's medical condition as a whole. *Mitchell*, 771 F.3d at 782. As the Commissioner points out, the results of the December 2019 echocardiogram are questionable because the "study quality" was noted to be "[t]echnically suboptimal due to lung interference." (Doc. 18, PageID.502). And, as the ALJ noted, the follow-up appointment with Dr. Robichaux the next month indicated mild and unremarkable symptoms. The ALJ's reasoning in this regard is consistent, as he previously resolved a similar conflict in the evidence between the results of Dr. Eways's testing and the more severe results of Dr. Francez's testing by noting that mild and unremarkable symptoms were observed at both doctors' examinations.

The undersigned has also considered the other medical evidence Thomas has cited in support of Dr. Burnham's opinion. (*See* Doc. 23, PageID.537-541). While it certainly bolsters Dr. Burnham's opinion, Thomas ultimately fails to persuade the undersigned that the ALJ's decision to find the opinion of "limited persuasive value," while perhaps not based on the most charitable view of the record, was

---

404.1520b(c), 20 CFR 416.920b(c).

unreasonable or not supported by at least substantial evidence, a burden that is "not high." *Biestek*, 139 S. Ct. at 1154. As such, the Court must affirm the ALJ's finding, even if there is also substantial evidence, or even a preponderance of the evidence, supporting a different finding. *See, e.g.*, *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."). And to the extent Thomas claims certain medical notations are indicative of more severe limitations than what the ALJ found, even if the Court were to agree, Thomas has failed to persuade the undersigned that this would be anything more than the Court impermissibly reweighing the evidence or substituting its judgment for the ALJ's. *See Winschel*, 631 F.3d at 1178.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Thomas's applications for benefits is due to be **AFFIRMED**.

## V.    *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Thomas's May 27, 2019 DIB application and May 10, 2019 SSI application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

A final judgment consistent with this opinion and order shall issue separately

under Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of September 2022.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**